**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: sbogdanovich@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: pfraietta@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| MELANIE HOGAN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TICKETMASTER LLC, <br><br> Defendant. | Case No.  2:24-cv-10098 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Melanie Hogan brings this action on behalf of herself, and all others similarly situated against Ticketmaster LLC ("Ticketmaster" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action suit brought against Defendant Ticketmaster, LLC ("Ticketmaster") for unlawfully selling tickets to entertainment events in Illinois at above face value prices in violation of the Illinois Ticket Sale and Resale Act.

2. The Illinois Ticket Sale and Resale Act says: "it is unlawful for any person, persons, firm or corporation to sell tickets for baseball games, football games, hockey games, theatre entertainments, or any other amusement for a price more than the price printed upon the face of said ticket." 815 Ill. Comp. Stat. Ann. 414/1.5(a). Ticketmaster sells many tickets above face value.

3. To be sure, this law has certain narrow exceptions for ticket brokers, resellers, and internet website operators that facilitate the resale of tickets. *See* 815 Ill. Comp. Stat. Ann. 414/1.5 (b), (c), and (e). But Ticketmaster does not fall into any one of those exceptions. Every single exception requires the ticket broker, reseller, auctioneer, or Internet website operator to "adopt[] a procedure for the binding resolution of consumer complaints by an <u>independent, disinterested third party</u>." 815 Ill. Comp. Stat. Ann. 414/1.5 (b)(1)(F)(iii) (emphasis added); *accord* 815 Ill. Comp. Stat. Ann. 414/1.5 (c)(5) and (e)(6). As courts in both this District and the Ninth Circuit recently made clear, Ticketmaster does not send its disputes to an independent, disinterested third party. *Heckman v. Live Nation Ent., Inc.*, 686 F. Supp. 3d 939 (C.D. Cal. 2023), *aff'd*, 120 F. 4th 670 (9th Cir. 2024). Instead, starting on July 2, 2021, Ticketmaster began sending all its consumer disputes to "New Era ADR" an

organization whose "only source of revenue initially" was Ticketmaster. 686 F. Supp. 3d at 958.

    4.    As the Ninth Circuit summarized:

> New Era was founded in 2020. Its stated mission is to provide a "critical prophylactic measure for client's mass arbitration risk." While the parties dispute the extent of their collaboration, it is undisputed that New Era and [Ticketmaster's] attorneys … have shown a 'remarkable degree of coordination' in devising a set of procedures to be followed when large numbers of similar consumer claims are brought in arbitration. New Era offered a subscription option under which a client company pays an annual subscription fee. On June 21, 2021, Defendants executed a subscription agreement as New Era's first subscriber. Later that same day, New Era published procedures applicable to large-scale arbitrations in consumer cases.

*Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 677 (9th Cir. 2024) (internal citations omitted).

    5.    Writing a separate concurrence, Ninth Circuit Judge Lawrence J.C. VanDyke went on to say what we were all thinking: Ticketmaster and New Era ADR's cozy relationship created a "massive and obvious conflict of interest." *Heckman*, 120 F.4th at 694 (concurrence); *see also id.* at 693 (noting that this was a "massive elephant in the room that cries out for acknowledgement."). "Not only is the line between [Ticketmaster] and New Era blurry, but more than that, this agreement would require a New Era arbitrator to decide the question of whether their employer's invention—developed with the help of the party in front of them—is a failure. If the answer to that question is yes, goodbye New Era and the arbitrator's job as an arbitrator—with any arbitration provider, forever." *Id.* at 695. To hold otherwise requires "expecting a New Era arbitrator to exhibit a superhuman resistance to ordinary human incentives to issue a ruling that sinks New Era's entire operation and his own career." *Id.*

    6.    In short, because Ticketmaster failed to hire an "independent and disinterested third-party" dispute resolution provider, it cannot charge its Illinois consumers any price beyond the face value of the tickets.

CLASS ACTION COMPLAINT      2

7. For these reasons, Plaintiff seeks relief in this action individually, and on behalf of all other overcharged ticket purchasers in the state of Illinois that used Ticketmaster's website for actual and/or statutory damages, restitution, and injunctive relief under 815 Ill. Comp. Stat. Ann. 414/3 and common law.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant. The Illinois statute provides $100 in statutory damages per violation and Plaintiff believes Defendant overcharged Illinois ticket purchasers for several hundreds of thousands, if not millions, of tickets.

9. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in California.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is located in this District.

## PARTIES

11. Plaintiff Hogan is a consumer who, at all times material hereto, was a citizen and resident of Chicago, Illinois. On October 9, 2024, she purchased three tickets to *Nick Cannon Presents: Wild 'n' Out*, taking place at the United Center in Chicago, Illinois, on the same day, through Defendant's site. The ticket price she paid was higher than (1) the face value of the ticket, (2) the price for the ticket shown at the box office, or (3) the price of the ticket at the office of original distribution.

12. Defendant, Ticketmaster LLC is a limited liability company organized and existing under the laws of Virginia with its principal place of business at 7060 Hollywood Boulevard, Hollywood, California, 90028. Ticketmaster LLC is the successor in interest to Ticketmaster Entertainment, Inc., a Delaware corporation,

and is the largest ticketing company in the United States, with 2019 revenues of approximately $1.54 billion. Ticketmaster LLC owns and operates the website [www.ticketmaster.com](www.ticketmaster.com) and Ticketmaster mobile phone application, which is both a primary and secondary ticket selling platform.

## RELEVANT FACTUAL ALLEGATIONS

13. When a consumer visits the ticketmaster.com website, on the main page, she can select various entertainment events in the state of Illinois. For many events, Ticketmaster sells both direct primary tickets at face value, along with verified resale tickets *above* face value. For example, Figure 1, below, shows that Ticketmaster sells primary tickets to a Chicago Bulls game in Section 102, row 9 for face value (at $179.00), and Figure 2, next page, shows Ticketmaster also sells verified resale tickets in the same row at above face value (at $192.00).

**Figure 1**



CLASS ACTION COMPLAINT                                                                                      4

**Figure 2**



14. Under the Illinois Ticket Sale and Resale Act ("TSRA"), the general rule states that any person (including Ticketmaster) is prohibited from selling tickets to any amusement event at any price above face value. 815 Ill. Comp. Stat. Ann. 414/1.5. To be precise, the law says:

> Except as otherwise provided in subsections (b), (c), (d), (e), and (f-5) of this Section and in Section 4, it is unlawful for <u>any person</u> … to sell tickets for baseball games, football games, hockey games, theatre entertainments, or <u>any other amusement</u> for a price more than the price printed upon the face of said ticket, and the price of said ticket shall correspond with the <u>same price shown at</u> the box office or <u>the office of original distribution</u>.

815 lll. Comp. Stat. Ann. 414/1.5(a).

The Illinois TSRA has several exceptions. *See id.* ("Except as otherwise provided in subsections (b), (c), (d), (e), and (f-5) of this Section and in Section 4"). None of these exceptions apply here.

16. First, the Illinois TSRA permits *qualifying* ticket brokers to resell tickets at a markup. 815 Ill. Comp. Stat. Ann. 414/1.5(b). But this only applies to "to the resale of tickets … by a ticket broker who meets <u>all</u> of the following requirements … the ticket broker has adopted a procedure for the binding resolution of consumer complaints by an <u>independent, disinterested third party</u> and thereby submits to the jurisdiction of the State of Illinois." *See id.*, Section 1.5(b) and (b)(1)(F)(iii) (emphasis added). But Ticketmaster's Terms of Use say: "if your dispute regards the resale of a ticket for any event located in the State of Illinois, then the following applies: You may submit any complaint you may have to <u>New Era ADR</u> as an arbitration demand." *See* Figure 3. The Internet Archive has saved screenshots of this same webpage showing this exact provision on hundreds of occasions between 2023 and 2024.[1]

---

[1] https://web.archive.org/web/20240000000000*/https://help.ticketmaster.com/hc/en-us/articles/10468830739345-Terms-of-Use?_gl=1*140hcy4*_gcl_au*MTQzOTg4MzQyOS4xNzMwODY0OTQ5*_ga*MTY2NzgxODc5My4xNzMwODY0OTUy*_ga_C1T806G4DF*MTczMDk0NDc3NC43LjEuMTczMDk0NDc5Ni4zOC4wLjA.*_ga_H1KKSGW33X*MTczMDk0NDc3Ni41LjEuMTczMDk0NDc5Ni40MC4wLjA.&_ga=2.262943692.1557629343.1730864285-1667818793.1730864952.

**Figure 3**

> Special Provision Regarding Resale Tickets for Events Located in Illinois. Solely for the purpose of complying with the Illinois Ticket Sale and Resale Act, 815 ILCS 414/1.5 et seq., if your dispute regards the resale of a ticket for any event located in the State of Illinois, then the following applies: You may submit any complaint you may have to New Era ADR as an arbitration demand, in accordance with the rules and procedures outlined in this section, and any such claims shall be decided by an independent arbitrator in accordance with the Terms. Without waiving the agreement to arbitrate or any other terms in this Section 17, you also agree to submit to the jurisdiction of the State of Illinois for any complaints involving a ticketed event held in Illinois. For the sake of clarity, your agreement to submit to the jurisdiction of the State of Illinois for any complaint involving a ticketed event held in Illinois does not in any way waive your and our agreement to arbitrate, or the scope of arbitration, but simply means that—for any court proceeding that may take place in conjunction with an arbitration (e.g., a motion to enforce an arbitration award), or in the event the arbitration agreement is held unenforceable—you agree to submit to jurisdiction in Illinois. If you have an inquiry regarding a ticket resale transaction made for any event located in Illinois, please contact us at 550 W. Van Buren Street, 13th Floor, Chicago, Illinois 60607 or (877) 446-9450.

17.     New Era ADR is not an independent, disinterested third-party. *See Heckman*, 120 F.4th at 694. So, the (b)(1)(f)(iii) exception does not apply.

18.     Second, the Illinois TSRA permits ticket price markups made by a qualifying "reseller engaged in interstate or intrastate commerce on an Internet auction listing service," 815 Ill. Comp. Stat. Ann. 414/1.5 (c) or a reseller reselling tickets "through an Internet website," 815 Ill. Comp. Stat. Ann. 414/1.5(e).  But to qualify: "the operator [of the Internet auction listing service or Internet website must] ha[ve] adopted an independent and disinterested dispute resolution procedure that allows resellers or purchasers to file complaints against the other."  815 Ill. Comp. Stat. Ann. 414/1.5(c)(5) and (e)(6) (the quoted portion of both these subsections are identically worded).  And again, New Era ADR is not an independent, disinterested third-party. *See Heckman*, 120 F.4th at 694.  So, neither the (c)(5) nor the (e)(6) exception applies.

19.     Third, the Illinois TSRA permits "a not-for-profit organization for charitable purposes" to sell tickets at a markup. 815 Ill. Comp. Stat. Ann. 414/1.5(d). But Ticketmaster is very much a for-profit organization. So, the (d) exception does not apply.

20. Fourth, the Illinois TSRA says it is not "intended to prohibit nor shall ever be deemed to prohibit a ticket seller … from collecting a reasonable service charge … from a ticket purchaser in return for service actually rendered." 815 Ill. Comp. Stat. Ann. 414/4. But this Complaint expressly <u>does not</u> take issue with any service charges Ticketmaster collects in addition to the price of the tickets it sells on its platform. So, Section 4 does not apply.

21. In short, because New Era ADR is not an independent, disinterested third-party, Ticketmaster has not complied with the Illinois TSRA. As such, it was prohibited from selling tickets at a markup to events in the state of Illinois on its website. Thus, Plaintiff and other consumers that purchased tickets to events at these unlawfully high prices in the state of Illinois were harmed by paying these unlawfully applied adjustments. This is a classic pocketbook injury.

## CLASS ACTION ALLEGATIONS

22. **Nationwide Class**: Plaintiff seeks to represent a class defined as all individuals in the United States who purchased resale tickets to any amusement event within the state of Illinois from Defendant's website or mobile application above the face value of those tickets on or after July 21, 2021. Excluded from the Nationwide Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

23. **Illinois Subclass**: Plaintiff seeks to represent a class defined as all individuals in the Illinois who purchased resale tickets to any amusement event within the state of Illinois from Defendant's website or mobile application above the face value of those tickets on or after July 21, 2021. Excluded from the Nationwide Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

24. Members of the Nationwide Class and Illinois Subclass are so numerous that their individual joinder herein is impracticable. On information and belief,

members of the Nationwide Class and Illinois Subclass number in the hundreds of thousands and possibly millions. The precise number of Nationwide Class and Illinois Subclass members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Nationwide Class and Illinois Subclass members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

25. Common questions of law and fact exist as to all Nationwide Class and Illinois Subclass members and predominate over questions affecting only individual Nationwide Class and Illinois Subclass members. Common legal and factual questions include, but are not limited to: (a) whether Defendant's failed to select an independent and disinterested third-party to resolve disputes with resale ticket purchasers; (b) whether Plaintiff and class members are entitled to statutory damages under 815 Ill. Comp. Stat. Ann. 414/3.

26. The claims of the named Plaintiff are typical of the claims of the Nationwide Class and Illinois Subclass in that the named Plaintiff and the Nationwide Class and Illinois Subclass sustained damages as a result of Defendant's uniform wrongful conduct, based on Defendant's unlawfully applied increases to the price of resale tickets.

27. Plaintiff is an adequate representative of the Nationwide Class and Illinois Subclass because her interests do not conflict with the interests of the Nationwide Class and Illinois Subclass members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Nationwide Class and Illinois Subclass members will be fairly and adequately protected by Plaintiff and her counsel.

28. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Nationwide Class and Illinois Subclass

members. Each individual Nationwide Class and Illinois Subclass member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
**Violations of the Illinois Ticket Sale And Resale Act**
**815 Ill. Comp. Stat. Ann. 414/1, *et seq.***
**(On Behalf Of The Nationwide Class and Illinois Subclass)**

29. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

30. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and Illinois Subclass against Defendant.

31. Defendant Ticketmaster is a ticket broker or a reseller of tickets under the TSRA because it sells tickets on its website and mobile phone application.

32. Plaintiff and Class members on purchased tickets to amusement events in the state of Illinois through Defendant's website and mobile phone application at prices higher than either (1) the face value of the ticket, (2) the price for the ticket shown at the box office, or (3) the price of the ticket at the office of original distribution, in violation of 815 Ill. Comp. Stat. Ann. 414/1.5(a).

33. The sale of these tickets at marked-up prices was not otherwise permitted under any other subdivision in 815 Ill. Comp. Stat. Ann. 414/1.5 or 815 Ill. Comp. Stat. Ann. 414/4.

34. On October 9, 2024, Plaintiff purchased three resale tickets to a showing of *Nick Cannon Presents: Wild 'n' Out* on the same day, at the United Center in Chicago, Illinois, through Defendant's website. She paid a marked-up ticket price in violation of 815 Ill. Comp. Stat. Ann. 414/1.5(a). Plaintiff was harmed by being overcharged for this ticket.

35. In the alternative, by overcharging Plaintiff and Class members for their tickets, Defendant Ticketmaster and other third-party resellers were unjustly enriched. Defendant Ticketmaster and other third-party resellers retained a benefit to the Plaintiff and Class members' detriment. Because these ticket prices were marked up in violation of Illinois law, this benefit was unjust. Defendant Ticketmaster is joint and severally liable with any other third-party that sold tickets through Ticketmaster's website or mobile phone application.

36. At the time Plaintiff purchased her tickets, she was not aware of the Illinois Ticket Sale and Resale Act and that the price Defendant charged her was unlawfully high.

37. On behalf of herself and members of the Nationwide Class and Illinois Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages or one hundred dollars, whichever is greater, and reasonable attorneys' fees. *See* 815 Ill. Comp. Stat. Ann. 414/3. Plaintiff also seeks reeks to recover the amounts overcharged for tickets under the remedy of unjust enrichment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Nationwide Class and Illinois Subclass, prays for judgment as follows:

(a) For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an order declaring that Defendant's conduct violates the statute referenced herein;

(c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d) For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

Dated: November 21, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Stefan Bogdanovich*
      Stefan Bogdanovich

Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: sbogdanovich@bursor.com

Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150

CLASS ACTION COMPLAINT     12

Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com

*Attorneys for Plaintiff*